STATE OF NEBRASKA, APPELLEE, V.
KANDIE A. LEE, APPELLANT.
658 N.W.2d 669

Filed April 4, 2003. No. S-01-1321.

664

James R. Mowbray and Kelly S. Breen, of Nebraska Commission on Public Advocacy, for appellant.

Don Stenberg, Attorney General, and David Arterburn for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## I. INTRODUCTION

Kandie A. Lee was involved in a traffic stop during which sheriff's deputies became suspicious that Lee was involved in drug activity. After a canine sniff alerted the officers to the presence of illegal drugs in Lee's vehicle, a search warrant was obtained. A search of Lee's vehicle produced methamphetamine.

Following a hearing, Lee's motion to suppress was denied. A trial was held in Saline County District Court on stipulated facts, and Lee was convicted of possession of a controlled substance. Lee was sentenced to a term of 20 months' to 5 years' imprisonment. This appeal followed. We moved this case to our docket pursuant to our authority to regulate the caseload between this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## II. FACTUAL BACKGROUND

On November 30, 2000, Sgt. Jeff Mulbery and Deputy Anthony Lytle of the Saline County sheriff's office were on routine patrol in Saline County. At approximately 9 p.m., the officers conducted a security check of the Walnut Creek Recreation Area, an area owned by the local natural resources district and operated by the Nebraska Game and Parks Commission. Information received by the Saline County sheriff's office prior to this incident indicated that "drug dealers and users are meeting at this location for drug transactions."

During this security check, Mulbery and Lytle observed a green 1993 Plymouth Laser automobile being operated in an area marked by a sign indicating there were to be no unauthorized vehicles beyond that point. This area, according to Mulbery, was not "well lighted" and was "dark." Mulbery and Lytle then stopped the vehicle, which was occupied by Lee.

Upon contacting Lee at approximately 9:03 p.m., Mulbery inquired as to why Lee was present in an area restricted to authorized vehicles. Lee's initial response was that she was there to meet her boyfriend, Stacy Talbott. According to Mulbery, Lee appeared "really nervous" while being questioned. Lytle, who had accompanied Mulbery to Lee's vehicle, requested Lee's operator's license, after which request both officers returned to the patrol car. Lytle then requested the dispatcher at the sheriff's office to run a check of Lee's operator's license. The check disclosed that there were no outstanding warrants and that Lee's operator's license was not under suspension. In addition, at approximately the same time, Mulbery contacted Deputy Kenneth Uher, requesting that Uher report to the scene with the county's drug dog. Shortly thereafter, Mulbery and Lytle received information from Uher that Lee had "prior drug arrests."

Upon being advised of Lee's prior drug arrests, Mulbery and Lytle approached Lee a second time and again asked why she was at the recreation area. This time, according to Mulbery, Lee's story "turned around." Lee now told the officers she was there to meet her boyfriend, whose name was "Johnson," and that Talbott, whom Lee had earlier identified as her boyfriend, was in fact Lee's brother. The officers then asked for consent to search Lee's vehicle, which Lee refused.

Uher and the county's drug dog arrived on the scene at 9:21 p.m. After sniffing the vehicle, the dog alerted to the presence of illegal drugs. At that point, Lee was again asked for permission to search the vehicle, and again permission was denied. Lee was then told she was free to leave, but that her vehicle would need to remain at the scene until a search warrant was obtained. After the search warrant was issued, Lee's vehicle was searched. Methamphetamine was found in Lee's purse, which was located on the front seat of the vehicle.

## III. ASSIGNMENTS OF ERROR

Lee assigns, rephrased, that the district court erred in (1) failing to excise from the probable cause affidavit averments regarding a canine sniff which were the product of an illegal detention and seizure, (2) failing to grant her motion to suppress evidence found in the search of her vehicle on the ground that there was no probable cause to issue a search warrant, and (3) finding that the search of her vehicle was justified under the search incident to an arrest exception to the warrant requirement.

## IV. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress evidence, ultimate determinations of reasonable suspicion are reviewed de novo by an appellate court, while findings of historical fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Kelley, ante* p. 563, 658 N.W.2d 279 (2003).

## V. ANALYSIS

Lee's primary contention is that the officers were not justified in detaining her while awaiting the arrival of the drug dog and that, therefore, "the detention of herself and her vehicle [was] illegal; and, the subsequent warrant issued was the fruit of this illegality." Brief for appellant at 6. As a result, Lee argues that any averment relating to the canine sniff must be excised from the affidavit in support of the search warrant. Lee contends that once the canine sniff is excised, the remaining averments do not support a finding of probable cause justifying the issuance of the warrant.

### 1. INITIAL STOP

We determine that the initial traffic stop was valid. It is well established that a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Dallmann*, 260 Neb. 937, 621 N.W.2d 86 (2000). Nebraska law provides that local authorities, including natural resources districts and the Game and Parks Commission, are permitted to "place and maintain such traffic control devices upon highways under their jurisdictions . . . to indicate and to carry out the provisions of the Nebraska Rules of the Road or to regulate, warn, or

guide traffic." Neb. Rev. Stat. § 60-6,121 (Reissue 1998). Furthermore, Neb. Rev. Stat. § 60-682 (Reissue 1998) provides that "a violation of any provision of the rules shall constitute a traffic infraction." Mulbery and Lytle's observation of Lee's vehicle in an unauthorized area provided probable cause for the officers to stop Lee.

▋ At the time Lee was initially stopped, the officers were entitled to conduct an investigation " ' "reasonably related in scope to the circumstances that justified the interference in the first place." ' " *State v. Anderson*, 258 Neb. 627, 634, 605 N.W.2d 124, 131 (2000) (quoting *U.S. v. Bloomfield*, 40 F.3d 910 (8th Cir. 1994)). Such an investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, or asking the driver about his or her destination or purpose. *State v. Anderson, supra.* A computer check may also be run to determine whether the vehicle involved in the stop has been stolen or whether there are outstanding arrest warrants for any of the individuals in the vehicle. *Id.* In order to expand the scope of the traffic stop and continue to detain the person for additional investigation, an officer must have a reasonable, articulable suspicion that the person is involved in criminal activity beyond that which initially justified the interference. *Id.* See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

We must therefore initially determine the point at which the " ' "circumstances that justified the interference in the first place" ' " ceased and continued detention began. See *State v. Anderson*, 258 Neb. at 634, 605 N.W.2d at 131.

### 2. POINT AT WHICH CONTINUED DETENTION BEGAN

The record shows that Lee was not given a citation as a result of her vehicle's being found in an unauthorized location within the recreation area. As such, the event which frequently determines the point after which reasonable suspicion must be found is not present. See, e.g., *State v. Anderson, supra*; *State v. Gutierrez*, 9 Neb. App. 325, 611 N.W.2d 853 (2000); *State v. McGinnis*, 8 Neb. App. 1014, 608 N.W.2d 605 (2000). The record does establish, however, that shortly after Uher advised Mulbery that Lee "had prior drug arrests," the officers requested permission to search the vehicle, which request was denied. Thereafter, Lee and

her vehicle were detained at the scene until the arrival of Uher and the drug dog. That such continued detention constituted a seizure for purposes of the Fourth Amendment is not contested by the State in its brief. The State acknowledges that "[f]ollowing the completion of the initial traffic stop and after consent to search had been denied, Sgt. Mulbery continued to detain Lee until such time as the drug dog arrived." Brief for appellee at 9. Based on our de novo review of the record, we determine that Lee's continued detention by the officers after consent to search was denied constituted a seizure for purposes of the Fourth Amendment. See *State v. Anderson, supra.*

We further determine it was at this point that the reasonable scope of the initial traffic stop ended. Once Lee denied permission to search, she had a right to proceed, unless during the period of lawful detention, Mulbery and Lytle developed a reasonable, articulable suspicion that Lee was involved in illegal activity beyond that which justified the interference in the first place. See, *State v. Anderson, supra; State v. McGinnis, supra.* See, also, *Terry v. Ohio, supra.*

### 3. REASONABLE, ARTICULABLE SUSPICION

Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause. *State v. Anderson,* 258 Neb. 627, 605 N.W.2d 124 (2000). Whether a police officer has a reasonable suspicion based on sufficient articulable facts requires taking into account the totality of the circumstances. *Id.* A finding of reasonable suspicion must be determined on a case-by-case basis. *State v. Mahlin,* 236 Neb. 818, 464 N.W.2d 312 (1991).

### 4. TOTALITY OF CIRCUMSTANCES

The State contends that the "totality of the circumstances" which justify a reasonable suspicion to continue Lee's detention includes: (a) information previously received that the recreation area had been used for drug transactions, (b) Lee's prior drug arrest history, (c) Lee's extreme nervousness, (d) Lee's divergent stories of whom she was meeting, and (e) Lee's operation of her vehicle in a restricted area at an unusual time.

## (a) Use of Recreational Area for Drug Transactions

The evidence pertaining to the use of this area for drug transactions comes from paragraph 8 of the affidavit in support of the search warrant, which was received into evidence at the suppression hearing. Paragraph 8 states: "The Saline County Sheriff's Office has received information prior to this incident that drug dealers and users are meeting at this location for drug transactions." This averment, the State contends, provides an appropriate circumstance for consideration in evaluating reasonable suspicion to detain. Lee's motion to suppress challenges the basis of such averment, contending that "[s]aid warrant contains information from unnamed sources whose reliability has not been demonstrated or otherwise appropriately qualified." The difficulty in evaluating the parties' respective arguments, however, is that one cannot tell from the district court's order whether it made a factual determination that the recreation area was being used for drug transactions and, if so, whether Mulbery and Lytle had knowledge of such information when they detained Lee.

While determinations of reasonable suspicion are made de novo, findings of historical fact to support reasonable suspicion are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial court. *State v. Kelley, ante* p. 563, 658 N.W.2d 279 (2003). Thus, while an appellate court will independently analyze the facts found by the trial court to determine if they amount to reasonable suspicion, it will nevertheless accept the trial court's factual findings unless they are clearly erroneous. *Id.*

We acknowledge that the averment in paragraph 8 of the affidavit in support of the search warrant may infer that Mulbery and Lytle were in possession of information that the recreation area in question had been used for drug transactions prior to Lee's continued detention. However, the evidence in this record amounts to little more than conclusory assertions by the State that drug transactions had occurred at the recreation area. Nothing in the record indicates where this information came from, why the source of the information was reliable, or whether the officers had the information when they detained Lee. Thus, even assuming that the trial court did find that the

recreation area was being used for drug transactions and that Mulbery and Lytle had knowledge of such information when they detained Lee, such finding was clearly erroneous. As a result, this evidence will not be considered in our reasonable suspicion analysis.

### (b) Prior Drug Arrest History

The State further relies upon information obtained from the Saline County sheriff's office dispatcher and from the Crete Police Department regarding Lee's drug arrest history to support the conclusion that Mulbery and Lytle had reasonable suspicion to detain Lee. Testimony was presented at the motion to suppress hearing that Mulbery and Lytle were aware of Lee's drug arrest history when they detained her while awaiting the arrival of Uher and the drug dog. Mulbery testified that while Uher was en route to the recreation area with the drug dog, Uher informed Mulbery and Lytle that Lee "had prior drug arrests."

An individual's criminal history may be a relevant factor when determining whether an officer has reasonable suspicion to detain an individual. *U.S. v. Sandoval*, 29 F.3d 537 (10th Cir. 1994) (cases collected). However, such history cannot form the sole basis to determine reasonable suspicion to support detention. *Id.* See, also, *People v. Ortiz*, 317 Ill. App. 3d 212, 738 N.E.2d 1011, 250 Ill. Dec. 542 (2000). We therefore conclude that Lee's prior drug arrest history is an appropriate factor for inclusion within the "totality of the circumstances" in our ultimate determination of reasonable suspicion.

### (c) Lee's Nervousness

In further support of the district court's finding of reasonable suspicion, the State argues in its brief that "[w]hen Lee was contacted by the officers, she was found to be extremely nervous." Brief for appellee at 10.

In *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000), we discussed nervousness as a factor in evaluating reasonable suspicion. In *Anderson*, citing *U.S. v. Beck*, 140 F.3d 1129 (8th Cir. 1998), we observed that "nervousness, as a basis for reasonable suspicion, must be treated with caution." 258 Neb. at 638, 605 N.W.2d at 135. The reason nervousness is of limited value is the recognition that " '[i]t is common knowledge that

most citizens . . . whether innocent or guilty, when confronted by a law enforcement officer who asks them potentially incriminating questions are likely to exhibit some signs of nervousness.'" *U.S. v. Hall*, 978 F.2d 616, 621 n.4 (10th Cir. 1992).

 Although nervousness is an appropriate factor for consideration within the "totality of the circumstances," its presence is of limited significance generally. *U.S. v. McRae*, 81 F.3d 1528, 1534 n.4 (10th Cir. 1996) (stating that "nervousness alone is not sufficient to justify further detention; however, in combination with other suspicious circumstances, it might contribute to a finding of articulable suspicion"); *State v. Anderson, supra.* We will therefore include Lee's nervousness as a factor within the "totality of the circumstances" in our ultimate determination of reasonable suspicion. However, such factor will be accorded minimal significance.

### (d) Lee's Divergent Stories

The State argues that the "divergent stories as to who[m] [Lee] was meeting and who her boyfriend was" is another appropriate factor for consideration within the "totality of the circumstances" supporting the trial court's determination of reasonable suspicion. Brief for appellee at 13. Specifically, the State points to the testimony of Mulbery to the effect that Lee's story "turned around" the second time Lee was asked her reasons for being in an unauthorized location in the recreation area. According to Mulbery, the first time Lee was asked why she was in the recreation area, her response was that she was there to meet her boyfriend, Talbott. The second time Lee was asked, however, she told Mulbery she was there to meet her boyfriend, "Johnson," and that Talbott was in fact her brother.

 An individual's inconsistent explanation of the reason for being at a particular location is a factor which may be considered within the "totality of the circumstances" in evaluating the existence of reasonable suspicion. See *U.S. v. Johnson*, 58 F.3d 356 (8th Cir. 1995) (indicating that inconsistent answers relating to purpose of trip may enable trooper to expand scope of stop). As such, we shall consider this circumstance in our ultimate determination of reasonable suspicion.

## (e) Presence in Unauthorized Location
## Within Recreation Area

As its final factor supporting Lee's continued detention, the State argues that Lee's operation of a vehicle in an unauthorized area at 9 p.m. in late November when no other activities were being conducted in the vicinity is an appropriate circumstance for consideration in a determination of reasonable suspicion.

 Lee's presence in the recreation area at 9 p.m. in late November in a location where vehicles were not authorized and when no other activities were being conducted in the vicinity does not amount to reasonable suspicion. However, it is a factor which can be considered in determining reasonable suspicion for continued detention. See *U.S. v. Dawdy*, 46 F.3d 1427 (8th Cir. 1995) (finding factors that may reasonably lead experienced officer to investigate to include time of day or night and location of suspect parties).

### 5. EVALUATION OF TOTALITY OF CIRCUMSTANCES

Based upon this record, the factors which we have concluded are appropriately within the "totality of the circumstances" for consideration in our de novo determination of reasonable suspicion are as follows: (1) Lee's drug arrest history, (2) Lee's nervousness, (3) Lee's divergent stories, and (4) Lee's presence in an unauthorized location within the recreation area at 9 p.m. in late November when no other activities were being conducted in the vicinity.

A determination of reasonable suspicion is based on the totality of the circumstances. *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000). The U.S. Supreme Court has concluded that even where each factor in a reasonable suspicion determination, considered independently, is consistent with innocent activities, those same factors may amount to reasonable suspicion when considered collectively. *United States v. Sokolow*, 490 U.S. 1, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). We evaluate those factors determined to be appropriate considerations in our totality of the circumstances analysis in such context.

When Lee was initially stopped, she was operating her vehicle in an unauthorized location within a recreation area at approximately 9 p.m. in late November when no other activities were

being conducted in the vicinity. This location, as described by Mulbery, was not "well lighted" and was "dark." When the officers approached Lee, they found her to be "really nervous." While conducting a check of Lee's license and registration, the officers learned of her prior drug arrest history. Having gained this knowledge, the officers again approached Lee. When Lee was asked a second time why she was present in the recreation area, her story "turned around." This time, Lee stated that she was there to meet a boyfriend whose last name was "Johnson" and that "Talbott" was, in fact, her brother. Upon our de novo review of the totality of the circumstances, we determine that these factors, when considered collectively, amount to reasonable, articulable suspicion to believe that "criminal activity was afoot." See, *Reid v. Georgia*, 448 U.S. 438, 441, 100 S. Ct. 2752, 65 L. Ed. 2d 890 (1980) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Accord *State v. Anderson, supra*. Viewed collectively, they amount to something more than an inchoate and unparticularized suspicion or " ' "hunch" ' " and support Lee's continued detention. *Reid v. Georgia*, 448 U.S. at 441. See, also, *State v. Anderson, supra*; *State v. McCleery*, 251 Neb. 940, 560 N.W.2d 789 (1997) (officers allowed to draw specific reasonable inferences from facts in light of their experience).

Having so determined, we need also consider whether the detention of Lee and her vehicle was reasonable in the context of an investigative stop. In doing so, we are guided by several considerations:

> We consider both the length of the detention and the efforts of police to conduct their investigation quickly and unintrusively in determining whether a detention is reasonable in the context of an investigative stop: "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."

*U.S. v. Bloomfield*, 40 F.3d 910, 916 (8th Cir. 1994) (quoting *U.S. v. Willis*, 967 F.2d 1220 (8th Cir. 1992)).

First, we consider the length of Lee's detention. In *U.S. v. Hardy*, 855 F.2d 753 (11th Cir. 1988), the court determined that a

wait of 50 minutes for the arrival of a drug dog was not unreasonable for Fourth Amendment purposes. See, also, *U.S. v. White*, 42 F.3d 457 (8th Cir. 1994) (1-hour-20-minute wait for arrival of drug dog not unreasonable for Fourth Amendment purposes); *U.S. v. Bloomfield, supra* (1-hour wait for arrival of drug dog not unreasonable for Fourth Amendment purposes). The record indicates that just minutes after Lee was initially stopped, Uher was ordered to report to the recreation area with the drug dog, and further that Lee was detained for approximately 20 minutes. We determine that under the circumstances presented in this case, the length of Lee's detention was not unreasonable under the Fourth Amendment.

Second, we must consider whether the "investigative methods employed [were] the least intrusive means reasonably available to verify or dispel the officer's suspicion." See *U.S. v. Bloomfield*, 40 F.3d at 916. In this case, the officers chose to use a canine sniff to dispel their reasonable suspicion.

> [A] canine sniff does not require the opening of luggage and does not reveal intimate but noncontraband items to public view. "[T]he manner in which information is obtained through this investigative technique is much less intrusive than a typical search." [*United States v. Place*, 462 U.S. 696, 707, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983).] Nor does a canine sniff involve the time-consuming disassembly of luggage or an automobile frequently required in a thorough search for contraband.

*U.S. v. Hardy*, 855 F.2d at 759. Accord *State v. Chronister*, 3 Neb. App. 281, 526 N.W.2d 98 (1995). We agree that a canine sniff is minimally intrusive and was also not unreasonable for Fourth Amendment purposes.

Finally, we acknowledge that Mulbery called Uher, requesting the drug dog's presence, prior to Mulbery and Lytle's completion of their initial investigation. However, we find this irrelevant in our ultimate determination of reasonable suspicion. In our review of the record, it is clear that the drug dog did not arrive until after such time as the officers had reasonable suspicion to continue to detain Lee.

### 6. PROBABLE CAUSE FOR ISSUANCE OF WARRANT

Having determined that the officers had reasonable suspicion to continue Lee's detention, we further determine that the canine

sniff need not be excised from the affidavit in support of the search warrant. Therefore, the following averments in the affidavit upon which we must evaluate probable cause include, inter alia: (1) information that the area in question was known to be used for drug transactions, (2) Lee's drug arrest history, (3) Lee's divergent stories, (4) Lee's "driving in a restricted area . . . posted 'No Unauthorized Vehicles beyond this point,' " and (5) the drug dog's positive alert after performing a sniff of Lee's vehicle.

 In evaluating the validity of a search warrant, we consider familiar principles:

A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *State v. Johnson*[, 256 Neb. 133, 589 N.W.2d 108 (1999)]. "Probable cause" sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997). Proof of probable cause justifying issuance of a search warrant generally must consist of facts so closely related to the time of issuance of the warrant as to justify a finding of probable cause at that time. *State v. Johnson, supra.* Probable cause to search is determined by a standard of objective reasonableness, that is, whether known facts and circumstances are sufficient to warrant a person of reasonable prudence in a belief that contraband or evidence of a crime will be found. *State v. Craven, supra.*

In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" rule whereby the question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996). As a general rule, an appellate court is restricted to consideration of the information and circumstances found within the four corners of the affidavit. *State v. Johnson, supra.* . . .

. . . .

When a search warrant is obtained on the strength of information received from an informant, the affidavit in

support of the issuance of the warrant must set forth facts demonstrating the basis of the informant's knowledge of criminal activity. The affidavit must also either establish the informant's credibility or set forth a police officer's independent investigation of the information supplied by the informant. [Citations omitted.] This is so because without information regarding the informant's credibility, " '[t]he magistrate would have no way of ascertaining whether this tip was rumor, speculation, vendetta, reprisal, or gossip.' " *State v. Lytle*, 255 Neb. at 749, 587 N.W.2d 672, quoting with approval *State v. Valley*, 252 Mont. 489, 830 P.2d 1255 (1992). If an affidavit does not establish that an informant is reliable, a search warrant issued solely upon the information supplied by the informant is invalid. *State v. Lytle, supra.*

*State v. Ortiz*, 257 Neb. 784, 790-91, 805, 600 N.W.2d 805, 813-14, 822 (1999).

With respect to the information that the area was used for drug transactions, the record does not disclose the source of that information. We simply do not know whether the source was a citizen informant or an informant who has given reliable information in the past. See, *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001); *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). Furthermore, there is no evidence that establishes how long "prior to this incident" drug dealers were meeting at this location. We are left to speculate as to whether the averment in paragraph 8 occurred within a reasonable time so as not to be stale. See, *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002); *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991). Without any information as to the credibility of the source of this averment, the judge issuing this warrant would " 'have no way of ascertaining whether this tip was rumor, speculation, vendetta, reprisal, or gossip.' " See *State v. Lytle*, 255 Neb. 738, 749, 587 N.W.2d 665, 672 (1998), *disapproved on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). We therefore determine for the foregoing reasons that such averment is entitled to no weight in our ultimate determination of probable cause.

This, however, does not end the inquiry. As noted above, "if an affidavit does not establish that an informant is reliable, a search warrant issued solely upon the information supplied by the informant is invalid." *State v. Ortiz*, 257 Neb. at 805, 600 N.W.2d at 814. We are not presented with such a situation here. The affidavit in support of the search warrant contains information which is independent of the averment that the recreation area was being used for drug transactions. Thus, while such averment is entitled to no weight in our analysis, we will nevertheless assess the remainder of the affidavit, based on the totality of the circumstances, in concluding whether such affidavit provided probable cause to issue the search warrant for Lee's vehicle. See, *State v. Faber, supra*; *State v. Ortiz, supra.*

When reviewing an issuing magistrate's decision with respect to the establishment of probable cause, we traditionally apply a standard of review which gives a magistrate's determination great deference. See *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996) (citing *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). However, where the affidavit before the issuing magistrate contains information that an appellate court will not consider in a probable cause determination, the decision of the issuing magistrate is not entitled to such deference, but, rather, must be reviewed de novo. " '[A]s a matter of logic and common sense, a reviewing court cannot defer to a magistrate's consideration of an application for search warrant that the magistrate in effect did not review.' " See *Montana v. St. Marks*, 312 Mont. 468, 474, 59 P.3d 1113, 1117 (2002). See, also, 5 Wayne R. LaFave, Search and Seizure, a Treatise on the Fourth Amendment § 11.4 (3d ed. 1996). Here we do not give deference to the magistrate's decision, since we do not consider the averment that the recreation area was being used for drug transactions. Instead, we review the affidavit de novo. Although we conducted a de novo review in *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999), to the extent that *Ortiz* could be read as giving deference to the issuing magistrate's probable cause determination after excision of averments from the search warrant affidavit, it is disapproved.

The remaining circumstances as set forth in the affidavit in support of the search warrant show that Lee had prior drug arrests,

was present on "November 30, 2000 at 2103 hours . . . in an area posted 'No Unauthorized Vehicles beyond this point,' " and gave divergent explanations as to the reason for her presence at the recreation area. In addition, the canine sniff resulted in a positive alert for the presence of drugs. See, e.g., *U.S. v. Gregory*, 302 F.3d 805 (8th Cir. 2002) (positive alert by drug dog provides probable cause for search); *State v. Chronister*, 3 Neb. App. 281, 526 N.W.2d 98 (1995) (positive alert from drug dog constitutes probable cause for issuance of search warrant). See, also, *State v. Staten*, 238 Neb. 13, 469 N.W.2d 112 (1991) (positive alert by drug dog constitutes probable cause for arrest).

When these factors are considered collectively, we determine upon our de novo review, based upon a standard of objective reasonableness, that the totality of the above circumstances is sufficient "to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime" would be found in Lee's vehicle. See *State v. Craven*, 253 Neb. 601, 610, 571 N.W.2d 612, 619 (1997).

### 7. REMAINING ASSIGNMENTS OF ERROR

Having concluded that the officers had reasonable suspicion to detain Lee following the conclusion of the initial traffic stop and further that probable cause existed for the issuance of a search warrant for her vehicle, it is unnecessary for us to consider whether the district court erred in its "alternative" finding that the search of Lee's vehicle was justified as a search incident to arrest. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *State v. Burdette*, 259 Neb. 679, 611 N.W.2d 615 (2000). We also need not consider the State's contention that Lee's continued detention was supported by a de minimis exception to the Fourth Amendment. See *State v. Burdette, supra.*

## VI. CONCLUSION

The officers who approached Lee for operating her vehicle in an unauthorized area had reasonable suspicion to continue to detain her after the initial traffic stop was complete. Thus, Lee's continued detention was not an unreasonable seizure for Fourth Amendment purposes. As such, the relevant averments contained in the affidavit in support of the search warrant were sufficient for

its issuance, and the action of the district court in overruling Lee's motion to suppress was correct.

AFFIRMED.

HENDRY, C.J., dissenting.

I respectfully dissent. In my view, Sgt. Jeff Mulbery and Deputy Anthony Lytle did not have reasonable suspicion to continue Kandie A. Lee's detention after completing their initial investigation. As such, the positive canine sniff resulting from Lee's continued detention should be excised from the affidavit for search warrant. See *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999). Considered without the averments regarding the canine sniff and the area's being known to be used for drug transactions, the affidavit for search warrant would not, in my opinion, establish probable cause to justify its issuance. Therefore, because the search warrant was invalidly issued, the resulting search was illegal and the fruit of that illegal search—the methamphetamine—should have been suppressed.

I concur with the majority's conclusion that insofar as the trial court made a factual finding that Mulbery and Lytle possessed information prior to Lee's continued detention that the recreation area in question had been used for drug transactions, such finding was clearly erroneous. I agree, therefore, that such factor should not be considered within the totality of the circumstances in evaluating whether the officers had reasonable suspicion to continue Lee's detention.

I disagree with the majority's determination, however, that the remaining four factors amount to reasonable suspicion. For the reasons discussed below, I believe the record demonstrates that each of the factors is of minimal significance in the ultimate determination of reasonable suspicion.

Lee's arrest record lacks a "temporal nexus" to the officers' suspicion that Lee was involved in drug activity. See *State v. Johnson*, 256 Neb. 133, 144, 589 N.W.2d 108, 116 (1999), *overruled on other grounds, State v. Davidson*, 260 Neb. 417, 618 N.W.2d 418 (2000) (concluding averment in affidavit regarding suspect's prior drug conviction was insufficient to establish probable cause due to absence of additional facts establishing temporal nexus to current investigation of suspect). See, also, *State v. Ortiz, supra*. Unless there is some temporal nexus between a

suspect's arrest record and the circumstances of the suspect's detention, such factor is of limited significance and, therefore, does not establish reasonable suspicion. *Id.* Since the State's evidence that "drug dealers and users are meeting at this location for drug transactions" cannot be considered within the totality of the circumstances, the required nexus is not present. See *State v. Johnson, supra.*

I agree with the majority's conclusion that Lee's nervousness is "of limited significance" since, as a general matter, most citizens become nervous when confronted by law enforcement officers. However, I believe the significance of Lee's nervousness is even further diminished by the fact that the record with respect to Lee's nervousness would appear to consist primarily of the four following words: "she was really nervous." Nowhere in the record can there be found a description of Lee's conduct from which Mulbery concluded Lee was "really nervous." We do not know, inter alia, whether Lee was shaking or had difficulty locating her registration, see *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000), or failed to make eye contact, see *U.S. v. Beck*, 140 F.3d 1129 (8th Cir. 1998). In my view, the absence of any particularized description of Lee's nervousness or an explanation as to why Lee's nervousness was suspicious prevents the court from accurately assessing whether such factor reasonably led the officers to suspect Lee was involved in drug activity.

With respect to Lee's "divergent stories," it is clear from the record that any divergence was, at the very most, minor. At the suppression hearing, Mulbery testified:

Q. What was, what did she say that led to your conclusion that her story was misleading or false?

A. Well, she first said she was out to meet her boyfriend Stacy Talbott. And then she turned around and said that her brother, Stacy Talbott is her brother. And then said that her boyfriend was with Stacy Talbott with the last name of Johnson.

Q. Isn't it entirely possible that what she was saying was that she was there to see her boyfriend and Stacy Talbott?

. . . .

A. Could have been.

Moreover, given Lee's nervousness, there was an equally innocent explanation for the inconsistency.

With respect to Lee's presence in the unauthorized location within the recreation area at 9 p.m. in late November, I find little indication in the record that such factor was objectively suspicious or indicative of drug activity. Although Lee's vehicle was in an unauthorized area, the record demonstrates that it was only the presence of Lee's vehicle that was unauthorized. At all relevant times, the recreation area was open to the public. Had Lee parked her vehicle in an authorized area and walked to the location in question, there would have been no violation and no reason for the officers to stop her. Additionally, since the evidence relating to this area's being used for "drug transactions" cannot be considered, any link between Lee's presence in the recreation area and drug activity is further attenuated.

The majority determines that when all four of the above factors are considered collectively, they amount to reasonable suspicion. I disagree. Missing is any nexus between Lee's presence and drug activity. I find no adequate explanation in the record as to why such seemingly innocent factors, considered collectively, led the officers to suspect that Lee was involved in drug activity. To the contrary, I believe the record demonstrates the officers simply acted out of an inchoate hunch rather than suspicion based on articulable facts. I believe this conclusion is inescapable given that (1) the officers radioed for the drug dog *before* learning of Lee's drug arrest history and (2) there is no evidence in the record from which to conclude the officers knew that drug activity had occurred previously in the recreation area.

Therefore, I believe there is insufficient evidence in this record from which to conclude that the officers' suspicion was reasonable under the circumstances. The court is left to simply adopt the State's characterization of the officers' conduct. I do not believe this is permissible, since

> [i]t is for the courts to determine when an officer's conduct squares with the Fourth Amendment, giving "due weight," as the Court put it in *Terry* [*v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)], "to the specific reasonable inferences which he is entitled to draw from the facts *in light of his experience.*" And, it is for the police to

articulate the facts and what their experience reveals as to those facts. Such generalities as "he didn't look right" will not suffice; . . . the officer must relate what he has observed, and, when appropriate, indicate why his knowledge of the crime problem and the habits of the residents on his beat or of the practices of those planning or engaging in certain forms of criminal conduct gives special significance to what he observed.

(Emphasis in original.) 4 Wayne R. LaFave, Search and Seizure, a Treatise on the Fourth Amendment § 9.4(a) at 141-42 (3d ed. 1996).

In view of the record, the four factors relied upon by the majority are not, in my opinion, inherently or objectively indicative of drug activity. Moreover, any inferences of drug activity the officers were permitted to draw from such factors are simply not adequately set forth or thoroughly explained. Based upon this record, I am unable to conclude that the officers' suspicion that Lee was involved in drug activity was reasonable. I would reverse.

STEPHAN, J., joins in this dissent.