STATE OF NEBRASKA, APPELLEE, V.
TAMI L. KEHM, APPELLANT.
724 N.W.2d 88

Filed November 21, 2006.   No. A-06-123.

Eric J. Williams, York County Public Defender, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

INBODY, Chief Judge, and MOORE and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Tami L. Kehm appeals from a conviction and sentence for possession of methamphetamine. The district court for York County

denied Kehm's motion to suppress and subsequently found her guilty after a bench trial. Because we find that the arresting officer had a reasonable suspicion to detain Kehm after the purpose of the traffic stop was completed and the length of the detention was reasonable, we affirm.

## BACKGROUND

In an information filed on December 6, 2004, the State charged Kehm with possession of methamphetamine with intent to distribute, deliver, or dispense, in violation of Neb. Rev. Stat. § 28-416(1) (Cum. Supp. 2004). After Kehm pleaded not guilty, she filed a motion to suppress the evidence seized at the time of her detention and subsequent arrest. At the hearing conducted by the district court on April 12, 2005, only one witness, Officer Eric Jones, the arresting officer, testified. On July 12, the district court denied the motion, setting forth detailed findings of fact, which we quote at length as follows:

> Jones of the Nebraska State Patrol . . . has extensive training and experience in drug investigations. His experience includes a number of arrests of suspects in possession of controlled substances, including methamphetamine. On November 1, 2004, at approximately 11:45 p.m., while working as a Nebraska State Patrol road trooper, Jones stopped at [a truckstop] at the York I-80 interchange. Jones saw a vehicle which attracted his attention because of the area in which it was parked. The location of the vehicle was noteworthy to Jones because the vehicle had Hall County plates and seemed out of place in the area in which it was parked that late at night. . . . Jones then did a radio check on the registration of the vehicle and was advised that it was registered to . . . Kehm. This information was important to Jones because he had information that Kehm had been arrested previously for possession of a controlled substance. The identity of the registered owner also rang a bell in [Jones'] mind because Jones had arrested for possession of methamphetamine in Hall County, Nebraska, a person driving another vehicle registered to . . . Kehm approximately eleven months earlier.

Jones also received a physical description of . . . Kehm from the Nebraska State Patrol dispatcher and learned that she did not have a current Nebraska motor vehicle operator's license. . . .

Jones spotted an individual inside the [truckstop] building who matched the physical description of . . . Kehm. As he walked to the . . . building entrance, Jones walked by the [vehicle registered to Kehm] and made no investigation or examination of the [vehicle] even though he thought [it] was suspicious. Jones entered [the] building and continued watching this person. Jones watched [this person] leave the . . . building, enter the [vehicle] registered to . . . Kehm and drive away. . . . Jones had also left the building, re-entered his patrol vehicle, and followed the Kehm vehicle. Jones then conducted a traffic stop on the [vehicle] by activating his emergency lights. Kehm pulled over to the shoulder and stopped her vehicle on the I-80 eastbound entrance ramp. The vehicle stop occurred at approximately 11:55 p.m. Jones approached Kehm. Kehm asked Jones what she did wrong. Jones explained that he stopped Kehm because she was driving on an expired operator's license. Kehm acknowledged that she was driving on an expired operator's license. Jones had . . . Kehm get out of her vehicle and enter the patrol vehicle.

During the contact with Kehm in his vehicle, Jones smelled a chemical odor which, through his past experience, he associated with drug use. Jones had smelled this odor on prior occasions and had smelled a similar odor when examining confiscated methamphetamine. Jones asked Kehm about her destination that night. Kehm answered that she was on her way to visit her brother in Omaha, Nebraska. This meant that she would not have arrived at her brother's residence for at least another 1 ½, and more likely, another 2 hours or longer. During this conversation, Kehm told Jones that she was self-employed doing painting, cleaning, and odds and ends. Jones believed that during his conversation with Kehm she was talking faster than normal. Jones associated faster than normal speech with nervousness.

Initially, the Nebraska State Patrol dispatcher told Jones that Kehm had been arrested for possession of methamphetamine. In a later telephone conversation during the period Jones detained Kehm, another state patrol officer told Jones that Kehm was suspected of trafficking in methamphetamine or transporting methamphetamine for others, but that she had not been arrested for meth trafficking or possession. No factual basis or foundation for these conflicting statements was given nor did Jones request any factual information or foundation to support either of these statements.

At approximately 12:02 a.m., Jones completed the traffic stop and issued . . . Kehm a citation for no operator's license and returned her personal property to her. Kehm wished Jones a good night and was beginning to exit the patrol unit when Jones asked Kehm if she had ever been arrested for anything. Kehm stated she had been arrested previously for failure to appear and domestic violence. Jones asked . . . Kehm if she had ever been arrested for drugs and . . . Kehm said no. Jones again asked . . . Kehm if she had been arrested for anything like that and she again said no. Jones then asked . . . Kehm if she had any marijuana, methamphetamine or paraphernalia in [her vehicle]. Kehm said no to each question. . . .

Combining his [sic] observed, perceived, and inferred factors in his analysis at the scene, coupled with the fact that Jones was aware of previous criminal activity at the [truckstop], he asked Kehm's permission to search Kehm's vehicle. Kehm declined permission to search. On that, Jones advised . . . Kehm that he was going to have a drug detecting dog dispatched to the scene to examine . . . Kehm's automobile. The dog and handler were located in Grand Island, Nebraska, which necessitated a delay before the dog and handler arrived. Jones explained to Kehm the reason for the delay, indicating that there was no longer a drug detecting dog in York County.

The time period from the completion of the initial reason for the stop of . . . Kehm's vehicle for driving without a license until the drug detecting dog arrived was approximately 52 minutes. During th[ose] 52 minutes, Jones and

Kehm engaged in some conversation. Jones permitted Kehm to retrieve get [sic] from her [vehicle] the drink she purchased from the [truckstop] and smoke outside the patrol unit.

At approximately 12:54 a.m., Trooper Korte and Maximus, Korte's canine partner, arrived. The canine was not requested to do a sniff of Kehm's person and did not do so. The canine did not alert to any odor coming from . . . Kehm. Trooper Korte and Maximus conducted a sniff of the area around [Kehm's vehicle] at approximately 1:01 a.m. Trooper Korte notified Jones that Maximus alerted to the odor of drugs emanating from [Kehm's vehicle]. At approximately 1:05 a.m. Jones and Trooper Korte began a search of the vehicle, and, at approximately 1:15 a.m., Trooper Korte found crystal methamphetamine in various containers inside the [vehicle]. Kehm was then formally arrested.

The district court recognized that the decision by Jones to conduct an investigatory detention required "only reasonable suspicion based on articulable facts" and determined:

After the reason for the initial stop was concluded, Jones had a right to broaden his inquiry based on: [Kehm's] more rapid than normal speech pattern; her claim that she was driving to Omaha to meet her brother at a truly unusual hour, which, true or not, remained a truly unusual hour; the chemical odor emanating from [Kehm's] person; the fact that [Kehm] either had been arrested for possession of methamphetamine or was suspected of being involved in drug trafficking; the fact that [Kehm's] vehicle was parked in an unusual location at a place where significant drug activity had previously taken place; and, the fact that another person had been arrested by the same trooper in another of [Kehm's] vehicles while in possession of a controlled substance. . . . Jones, considering the totality of the circumstances, had accumulated more than sufficient articulable facts upon which to base his post-citation detention decision.

The district court also articulated an alternative basis for denying the motion, reasoning that because Jones could have made a custodial arrest, rather than issuing a citation, for the offense

of operating a motor vehicle without an operator's license, the search could be sustained as one made incident to an arrest.

A bench trial was held on October 12, 2005. On December 13, the court entered a verdict and order finding Kehm guilty of possession of a controlled substance, a lesser-included offense of the original charge. On January 23, 2006, the court sentenced Kehm to 20 months' to 3 years' imprisonment. Kehm timely appeals.

## ASSIGNMENTS OF ERROR

Under a general assignment that the district court erred in denying the motion to suppress, Kehm specifically assigns that the court erred in (1) failing to rule that the methods employed to investigate her offense of driving on an expired license were not the least intrusive available, (2) ruling that Jones had reasonable suspicion to detain her while awaiting a dog to conduct a sniff of the vehicle, (3) failing to rule that her continued detention while awaiting a drug dog was unreasonable, and (4) ruling that there was an alternative ground to deny her motion to suppress.

## STANDARD OF REVIEW

When reviewing a district court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search, ultimate determinations of reasonable suspicion and probable cause are reviewed de novo. But findings of historical fact to support that determination are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial court. *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006).

## ANALYSIS

*Least Intrusive Means.*

Kehm first contends that the district court erred in failing to rule that the methods employed by Jones to investigate Kehm's offense of driving on an expired license were not the least intrusive available. Kehm begins this argument by correctly reciting the rule that one type of police-citizen encounter is an investigatory stop, where the officer uses the least intrusive methods reasonably available to rapidly dispel or verify his suspicions. See *State v. Chronister*, 3 Neb. App. 281, 526 N.W.2d 98 (1995). Kehm then argues, "Here, because Jones could have more easily

and less intrusively investigated [Kehm's] expired license offense inside the [truckstop], or in the parking lot, his decision to wait until she drove away so he could conduct a traffic stop was improper, unreasonable, and contrary to the Fourth Amendment." Brief for appellant at 16-17. Kehm also argues that Jones could have conducted his investigation in a less intrusive manner by allowing Kehm to remain in her vehicle during the traffic stop, rather than requiring her to sit in his patrol car.

We find both arguments unpersuasive. While officers must use the least intrusive methods reasonably available to rapidly dispel or verify their suspicions during an investigatory stop, see *State v. Chronister, supra*, they are not held to this standard prior to conducting an investigatory stop. In the instant case, because the investigation prior to the traffic stop did not include any detention or investigatory stop, Jones had no duty to use the least intrusive means available. See *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005) (no detention or seizure when police officer requested registration check of vehicle). Jones did not act inappropriately by waiting for Kehm to commit a traffic violation before initiating contact with her.

We also find nothing unreasonable in Jones' request that Kehm sit in his patrol car during the stop. Once stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *State v. Voichahoske, supra*. The investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. *Id.* Jones acted within the scope of the circumstances when he requested that Kehm sit in his patrol car. We reject this assignment of error.

*Reasonable Suspicion for Continued Detention.*

We also find no merit to Kehm's second argument, that Jones did not have reasonable suspicion to detain her after he issued her a citation. Upon our review of the trial court's record, we conclude that the findings of historical fact are not clearly wrong. We proceed with our de novo review of reasonable suspicion.

Jones initially stopped Kehm because she was driving with an expired license. A traffic violation, no matter how minor,

creates probable cause to stop the driver of a vehicle. *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006). The original purpose of the traffic stop was completed when Jones issued Kehm a citation for driving with an expired license. In order to expand the scope of a traffic stop and continue to detain the person for additional investigation, an officer must have a reasonable, articulable suspicion that the person is involved in criminal activity beyond that which initially justified the interference. *Id.*

Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *Id.* Reasonable suspicion must be determined on a case-by-case basis. *Id.* To determine whether Jones had reasonable suspicion, we must look at the totality of the circumstances. See *id.*

When a determination is made to detain a person during a traffic stop, even where each factor considered independently is consistent with innocent activities, those same factors may amount to reasonable suspicion when considered collectively. *Id.* In the instant case, several factors considered collectively lead us to conclude that Jones had reasonable suspicion to believe that Kehm was engaged in criminal activity.

First, Jones testified that he became suspicious when he noticed Kehm's car parked in an unusual location in the truckstop's parking lot late at night. Kehm's car attracted his attention because he had never before seen it at that truckstop and because it had Hall County license plates but was parked in an area of the parking lot where typically only local vehicles would be found. He testified that typically when persons with out-of-state or out-of-county vehicles are doing business at the truckstop, they park close to the building rather than in the middle of the parking lot, where Kehm's car was parked. Jones testified that he was aware of typical parking patterns there because for the past 4 years, whenever he was on duty he had routinely stopped there for a break between 11:30 p.m. and midnight. He also testified that he was "aware . . . through intelligence that large amounts of drugs are deposited or transferred at [that] truck stop" and that he also was aware through personal experience that criminal activity had taken place at that location in the past.

Jones also testified that approximately 11 months earlier, he had arrested another individual for possession of methamphetamine who had been driving a vehicle registered to Kehm. When he was informed that the vehicle in the instant case belonged to Kehm, it aroused further suspicion. Although the individual in the earlier incident ultimately was not prosecuted for possession of methamphetamine, Jones testified that in his experience, people involved with drugs tend to associate together.

Jones also testified that he was suspicious of the midnight hour at which Kehm was purportedly traveling to Omaha to visit her brother. As the district court noted, Kehm still had a significant distance to travel, which would have resulted in her arrival at an even more unusual hour. In *State v. McGinnis*, 8 Neb. App. 1014, 608 N.W.2d 605 (2000), we noted that although unusual or suspicious travel plans may give rise to reasonable suspicion, such a determination is fact based, and where a reasonable explanation for the travel exists, courts have not relied upon this factor as support for reasonable suspicion. Despite the fact that Kehm offered an explanation for why she was traveling at a late hour, the district court concluded that regardless of whether the explanation was true or not, the time at which Kehm was traveling was still suspicious. We find no clear error in this factual determination.

Other factors that made Jones suspicious were the fact that Kehm was self-employed and the chemical smell that emanated from Kehm's person while she sat in Jones' patrol car. Jones testified that through his experience, he had learned a large number of the people he arrested for drugs were either self-employed or between jobs. And while Jones conceded the possibility that the odor he noticed could have been from something other than methamphetamine, he testified that he had smelled a similar odor on several occasions where large amounts of methamphetamine and cocaine were found. See *U.S. v. Pollington*, 98 F.3d 341 (8th Cir. 1996) (smell of laundry detergent, which officer knew was commonly used to mask smell of narcotics, contributed to finding of reasonable suspicion).

Finally, Jones testified, based upon his personal experience, that Kehm was speaking faster than most people speak during routine traffic stops and seemed overly nervous. Relying upon

authority from another jurisdiction applying de novo review to a video recording, Kehm urges us on appeal to review this finding of fact de novo on the record. However, that argument is inconsistent with our clear error standard of review for findings of historical fact by the trial court, see *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006), and we reject Kehm's invitation to deviate from the controlling precedent.

We determine that the trial court did not commit clear error when it concluded that Kehm was speaking fast and seemed nervous. Although of limited usefulness, nervousness exhibited by a motorist during a traffic stop may be considered along with other factors in determining whether the officer has reasonable suspicion to expand the scope of the detention. *State v. Verling*, 269 Neb. 610, 694 N.W.2d 632 (2005).

We may consider any added meaning certain conduct might suggest to experienced officers trained in the arts of observation and crime detection and acquainted with operating modes of criminals. See *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000). We recognize the district court's finding that Jones was an experienced officer whose experience included making a number of arrests for possession of drugs. While we conclude that none of the above factors alone is sufficient to find that Jones had a reasonable, articulable suspicion that criminal activity was afoot, we consider all of them in our de novo review.

We will not consider Jones' reliance upon allegations that Kehm transported methamphetamine or was arrested for possession of methamphetamine. While we recognize that an individual's criminal history may be a relevant factor when determining whether an officer has reasonable suspicion to detain an individual, see *State v. Lee*, 265 Neb. 663, 658 N.W.2d 669 (2003), the information must be reliable before we consider it in our analysis.

We disregard Jones' initial reliance upon information that Kehm had previously been arrested for possession of methamphetamine because this information was erroneous. See *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005) (information transmitted from dispatcher to police officer did not provide reasonable suspicion for stop where information was false due to dispatcher's mistake). We also disregard any reliance Jones placed

upon information that Kehm was suspected of trafficking meth-
amphetamine. In *State v. Lee, supra,* the Nebraska Supreme
Court disregarded evidence showing that officers received infor-
mation that the area where they initially noticed the offender
was used for drug transactions. The *Lee* court did not consider
this information in its reasonable suspicion analysis, because it
consisted of "little more than conclusory assertions" and noth-
ing in the record indicated where the information came from,
whether the source of the information was reliable, and whether
the arresting officers had the information at the time they de-
tained the offender. 265 Neb. at 670, 658 N.W.2d at 678. We do
not consider similar information in the instant case because the
source of the information was proved to be unreliable and no
facts were given to support the conclusory assertion.

Based upon the record, the factors that are appropriately
within the "totality of the circumstances" for consideration in
our de novo review are as follows: (1) Kehm's vehicle was
parked in an unusual location at a place where significant drug
activity had previously taken place, (2) 11 months earlier Jones
had arrested another individual for possession of methamphet-
amine driving a vehicle registered to Kehm, (3) the chemical
odor emanating from Kehm, (4) the unusual hour when Kehm
was purportedly traveling to visit her brother, (5) Kehm was
self-employed, and (6) Kehm's nervousness, although we give
this factor limited weight.

We recognize that a series of acts that appear innocent,
when viewed separately, may warrant further investigation when
viewed together. *U.S. v. Bloomfield,* 40 F.3d 910 (8th Cir. 1994).
The acts in the instant case, considered separately, may appear
innocent. However, when considered together, they are consistent
with acts of one who is engaged in illegal activity. Upon our de
novo review, we determine that Jones had reasonable suspicion to
suspect that Kehm was engaged in transporting illegal drugs.

*Reasonableness of Continued Detention.*

Kehm contends in her third assignment of error that her
continued detention while awaiting the arrival of a drug detect-
ing dog was unreasonable. We disagree. To evaluate the reason-
ableness of Kehm's detention, we must consider both the length

of the continued detention and the investigative methods employed, see *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006), which we address in turn.

The length of an investigative stop must be no greater than is necessary to effectuate the purpose of the stop. See *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997). The U.S. Supreme Court held that an investigative stop that lasted 90 minutes, where the police did not diligently pursue the investigation, was not reasonable, but declined to establish a strict time limitation on what is reasonable. *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). Likewise, this court has held that " 'rigid time limitation[s]' or ' "bright line" ' rules are not determinative of [the] legality [of investigative stops]." *State v. Chronister*, 3 Neb. App. 281, 288, 526 N.W.2d 98, 104 (1995), quoting *United States v. Sharpe*, 470 U.S. 675, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985).

In State v. *Soukharith, supra*, the Nebraska Supreme Court found that an investigatory stop lasting 34 to 45 minutes was reasonable. While *Soukharith* is helpful to our analysis, because the detention in *Soukharith* was shorter than the detention in the instant case we look to cases from other jurisdictions to determine how other courts have treated detentions as long as or longer than the detention in this case. Our research reveals that investigatory stops lasting 50 minutes or longer have been upheld in several federal appellate decisions. See, e.g., *U.S. v. White*, 42 F.3d 457 (8th Cir. 1994) (80-minute detention reasonable); *U.S. v. Bloomfield, supra* (60-minute detention reasonable); *U.S. v. Hardy*, 855 F.2d 753 (11th Cir. 1988) (50-minute detention reasonable).

To evaluate whether the investigative methods employed during the detention were reasonable, we consider several factors, including law enforcement purposes served by the detention, the diligence with which the police pursued the investigation, and the scope and intrusiveness of the detention. See *State v. Soukharith, supra*. The U.S. Court of Appeals for the 11th Circuit analyzed very similar factors in *U.S. v. Hardy, supra*. In *Hardy*, the police detained an individual after a routine traffic stop for approximately 50 minutes while awaiting the arrival of

a drug detecting dog. While the *Hardy* court expressed "some unease on encountering a *Terry* stop lasting as long as fifty minutes," because the "other aspects to the stop demonstrat[ed] that the police acted with propriety . . . and [because of] the expedition with which the police arranged for a narcotics dog, the doubts raised by the length of the detention are not sufficient for us to find that the stop violated the fourth amendment." 855 F.2d at 761. See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The "other aspects to the stop" in *Hardy* included the intrusiveness of the canine sniff, the diligence with which the police conducted the stop, and the scope and intensity of the intrusion. The court held that a canine sniff is the kind of brief, minimally intrusive investigation technique that may justify a *Terry* stop. *U.S. v. Hardy, supra*. See, also, *State v. Lee*, 265 Neb. 663, 658 N.W.2d 669 (2003). The court determined that the police search was diligent because the arresting officer called for a drug detecting dog immediately upon deciding a canine sniff was warranted and the canine officer immediately left for the scene upon being called. The court then concluded that the scope and intensity of the intrusion were reasonable because the offenders were not removed to an office or police station, the arresting officer did not question the offenders while awaiting the drug dog, and the offenders were not placed in the back of the patrol car during the wait, but were allowed to wait in their own car. *U.S. v. Hardy, supra*.

In the instant case, it took approximately 52 minutes for the canine unit to arrive after Jones requested the unit's assistance. However, the officers acted diligently to conduct the canine sniff in a reasonable amount of time. Jones called for the canine unit approximately 8 minutes after he stopped Kehm, and the canine officer left for the scene within minutes of receiving the call.

The scope and intrusiveness of the detention were reasonable. While waiting for the dog to arrive, Kehm sat in the front seat of Jones' patrol car and Jones allowed Kehm to go back to her vehicle to retrieve and finish her drink and also allowed her to smoke a cigarette. Jones did not interrogate Kehm throughout the detention, but instead engaged in conversation unrelated to

the events. When the drug dog arrived, it conducted an exterior sniff of Kehm's vehicle. We conclude that the detention of Kehm was reasonable in both time and scope.

*District Court's Alternate Basis.*

In light of our conclusion that Jones had reasonable suspicion to detain Kehm and the detention was reasonable, we do not address Kehm's argument that the district court erred in articulating an alternative basis to deny Kehm's motion to suppress, as it is unnecessary to the disposition of this case. See *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000) (appellate court is not obligated to engage in analysis not needed to adjudicate case and controversy before it).

## CONCLUSION

We determine that the district court did not err in denying Kehm's motion to suppress. We conclude that Jones had reasonable suspicion to detain Kehm and that the detention was reasonable. We therefore affirm.

AFFIRMED.