744 N.W.2d 454 (2008)
275 Neb. 101
STATE of Nebraska, appellee,
v.
Richard L. LOUTHAN, appellant.
No. S-07-593.
Supreme Court of Nebraska.
February 15, 2008.
*458 Melissa A. Wentling, Madison County Public Defender, and Harry A. Moore, Madison, for appellant.
Jon Bruning, Attorney General, and James D. Smith, Lincoln, for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
After a bench trial in the district court for Madison County, Richard L. Louthan was convicted on one count of possession of a controlled substance. The principal issue on appeal is whether Louthan's Fourth Amendment rights were violated when a law enforcement officer prolonged a traffic stop for several minutes in order to deploy a drug detection dog. We conclude that there was no violation of Louthan's rights and that the evidence obtained from the vehicle as a result of the dog sniff was properly used to secure his conviction.

I. BACKGROUND
Jason Bauer is a patrol officer and police service dog handler employed by the Norfolk Police Division. Late on the evening of December 2, 2006, Bauer was conducting surveillance on a Norfolk, Nebraska, residence. He was, observing the residence because the police division had received complaints from neighbors about "stop-and-go traffic" indicative of drug activity. Also, Bauer had been informed by at least two persons whom he arrested for drug offenses that the owner of the residence was a methamphetamine distributor. Bauer's sources indicated drug activity had occurred at the residence as recently as November 2006. Bauer testified that he had observed the residence on previous occasions over the last 2 years and had seen persons he knew to be actively engaged in the drug trade leaving the residence.
When he arrived at the residence, Bauer observed a vehicle parked nearby. Bauer determined that the vehicle was registered to Louthan and that the license plates had expired. Approximately 5 minutes after Bauer began his surveillance, he saw Louthan exit the residence and enter the vehicle. Bauer had not seen Louthan enter the residence and did not know how long he had been inside. Bauer initiated pursuit with the intent of stopping Louthan based on the expired plates. He also intended to request Louthan's permission to search the vehicle. Pursuant to police division policy, he requested a backup officer.
Bauer initiated the traffic stop based on the expired plates and Louthan's failure to signal a turn. Louthan acknowledged that he had come from the residence which Bauer had been observing. Bauer questioned Louthan about his involvement with drugs, and Louthan stated that he was *459 free on bond on a pending charge of possession of a controlled substance and that an attempted manufacture charge had also been filed against him. Bauer asked Louthan when he had last used controlled substances, and Louthan responded that it was in September 2006, when he was arrested for possession. Bauer asked Louthan to step out of the vehicle and obtained consent to search Louthan's person. The search revealed nothing of consequence. Bauer then requested permission to search the vehicle, but Louthan refused. Bauer testified that Louthan became "extremely nervous" at this point, although in his report, he noted that Louthan was "somewhat nervous."
Bauer then called the police dispatcher and determined that Louthan's operator's license was valid and that he had no outstanding warrants. As he was doing this, the backup officer arrived on the scene. After completing his conversation with the dispatcher, Bauer directed Louthan to remain with the backup officer. Bauer then retrieved his drug detection dog from his vehicle and directed the dog to sniff the exterior of Louthan's vehicle. At that point, approximately 7 minutes had elapsed since the inception of the traffic stop.
The dog did not alert in his initial pass around the vehicle. Bauer then began to "detail," directing the dog to sniff in certain locations of the vehicle. The dog alerted and eventually indicated the scent of drugs near the middle of the front hood of the vehicle. Bauer then informed Louthan that he intended to search the interior of the vehicle. From the time that the dog sniff began until Bauer informed Louthan of the result, approximately 4 minutes had elapsed. Bauer then searched the interior of the vehicle and found Louthan's wallet on the transmission hump of the vehicle. Inside the wallet were two bags containing a "rocky substance" later confirmed to be methamphetamine.
Approximately 12½ minutes after Louthan was initially stopped, he was arrested and charged with one count of possession of a controlled substance. He filed a motion to suppress the evidence obtained as a result of the search of his vehicle, arguing that Bauer lacked reasonable suspicion to further detain him after the traffic stop. After conducting an evidentiary hearing, the district court denied the motion. Following a bench trial on stipulated evidence at which Louthan's objection to the dog sniff and resulting search was preserved, he was convicted and sentenced. He filed this timely appeal, and we granted the State's petition to bypass the Court of Appeals.

II. ASSIGNMENT OF ERROR
Louthan assigns, restated, that the district court erred in overruling his motion to suppress the evidence seized from his vehicle because his continued detention after the initial traffic stop violated his right to be free from unreasonable searches and seizures under the 4th and 14th Amendments to the U.S. Constitution and article I, § 7, of the Nebraska Constitution.

III. STANDARD OF REVIEW
When reviewing a district court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search, ultimate determinations of reasonable suspicion and probable cause are reviewed de novo. But findings of historical fact to support that determination are reviewed for clear error, giving due weight to the inferences drawn from those facts by the *460 trial court.[1]

IV. ANALYSIS
There is no issue concerning the propriety of the traffic stop. A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle.[2] Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop.[3] This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel.[4] Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are outstanding warrants for any of its occupants.[5] The record in this case reflects that these investigative procedures were completed within approximately 6 minutes after Louthan's vehicle was stopped.
In Illinois v. Caballes,[6] the U.S. Supreme Court held that a dog sniff "conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment," In that case, one officer conducted the traffic stop while another walked a drug detection dog around the exterior of the vehicle. The Court noted that the duration of the stop during which the dog sniff was conducted "was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop."[7] The facts in this case differ from those considered in Caballes in that here, the drug detection dog was not deployed until after the investigative steps incident to the traffic stop had been completed.
The Court in Caballes acknowledged and did not alter its prior holding that "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution."[8] The Court further noted that "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."[9] In this case, the dog sniff prolonged the traffic stop several minutes beyond the time required to conduct the normal investigative inquiries relating to the stop. The issue presented is whether prolonging the traffic stop for the time necessary to deploy the drug detection dog which was already at the scene violated Louthan's Fourth Amendment rights and rendered the evidence obtained through the resulting search inadmissible at his trial under the Fourth Amendment exclusionary rule.
In resolving this question in the negative, the district court applied a test *461 which this court has employed in cases decided before and after Caballes. We have held that in order to expand the scope of a traffic stop and continue to detain the motorist for the time necessary to deploy a drug detection dog, an officer must have a reasonable, articulable suspicion that the person is involved in criminal activity beyond that which initially justified the interference.[10] Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause.[11] Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances.[12] Reasonable suspicion must be determined on a case-by-case basis.[13] If reasonable suspicion exists, the court must then consider whether the detention was reasonable in the context of an investigative stop, considering both the length of the continued detention and the investigative methods employed.[14]
In this case, the district court determined that Bauer had a reasonable suspicion that Louthan was involved in unlawful drug activity because Bauer observed Louthan leave a residence where others had reported purchasing unlawful drugs, Louthan admitted that he had a pending charge of possession of methamphetamine, and Louthan appeared nervous during the traffic stop. The court further determined that the prolonged detention was reasonable, both with respect to its length and the manner in which it was conducted.

1. APPLICABLE STANDARD
The State argues that the district court reached the correct result by applying an incorrect standard. It urges this court to abandon our jurisprudence regarding the Fourth Amendment implications of prolonged traffic stops in favor of a "de minimis rule" employed by several state and federal courts.[15] This rule, as articulated in U.S. v. $404,905.00 in U.S. Currency,[16] holds that "when a police officer makes a traffic stop and has at his immediate disposal the canine resources to employ this uniquely limited investigative procedure, it does not violate the Fourth Amendment to require that the offending motorist's detention be momentarily extended for a canine sniff of the vehicle's exterior." Courts applying this rule reject what they perceive as an artificial distinction between the traffic stop and the time required for the canine sniff, reasoning that "the artificial line marking the end of a traffic stop does not foreclose the momentary extension of the detention for the purpose of conducting a canine sniff of the vehicle's exterior."[17]
We are not persuaded to abandon the reasonable suspicion standard in favor of *462 the "de minimis rule" advocated by the State. In Caballes, the Court specifically noted a distinction between a dog sniff occurring during a routine traffic stop and one occurring during an "unreasonably prolonged traffic stop."[18] Referring to a decision of the Illinois Supreme Court[19] holding that a dog sniff and subsequent discovery of contraband during an unreasonably prolonged traffic stop was the product of an unconstitutional seizure, the Court stated: "We may assume that a similar result would be warranted in this case if the dog sniff had been conducted while respondent was being unlawfully detained."[20] This indicates that there is a constitutionally significant line of demarcation between a routine traffic stop and one in which a dog sniff is conducted after the investigative procedures incident to the traffic stop have been completed. From the video of the traffic stop which is a part of the record in this case, it is apparent that the routine traffic stop had ended and the prolonged detention for deployment of the drug detection dog had begun by the time that Bauer received information from dispatch that Louthan's license was valid and that Louthan had no outstanding warrants.
Was the traffic stop "unreasonably prolonged" beyond this point? While the detention for the dog sniff was not lengthy, that is but one factor in the Fourth Amendment analysis, which requires the dual inquiries of "whether the officer's action was justified at its inception, and whether it was reasonably related in scope in the circumstances which justified the interference in the first place."[21] We agree with the view expressed by the dissent in State v. DeLaRosa[22] that "the threshold question . . . is whether the officer had an appropriate basis upon which to detain the citizen" after concluding the routine traffic stop. We conclude that the "reasonable suspicion" test is the appropriate, necessary, and correct standard for resolving that question.

2. EXISTENCE OF REASONABLE, ARTICULABLE SUSPICION
We turn, then, to Louthan's contention that the district court erred in applying this standard. As noted, the district court found that Bauer had a reasonable, articulable suspicion that Louthan was involved in unlawful drug activity for three reasons: (1) Bauer observed Louthan leave the residence of a suspected drug dealer, (2) Louthan admitted a prior arrest for possession of methamphetamine, and (3) Louthan appeared nervous when Bauer asked permission to search his vehicle. We examine each of these factors separately, mindful of the rule that when a determination is made to detain a person during a traffic stop, even where each factor considered independently is consistent with innocent activities, those same factors may amount to reasonable suspicion when considered collectively.[23]

(a) Residence of Suspected Drug Dealer
Relying on State v. Lee,[24] Louthan contends that the record provides no factual *463 basis for Bauer's testimony that the residence he was observing, and from which he observed Louthan exit, was a site of unlawful drug activity. In Lee, the State claimed reasonable suspicion sufficient to prolong the detention of a motorist stopped in a public recreation area based in part upon an averment that law enforcement had "`received information prior to this incident that drug dealers and users are meeting at this location for drug transactions.'"[25] Noting the lack of any showing regarding the source or reliability of this information, this court held that the averment amounted to "little more than conclusory assertions" which could not be considered in the reasonable suspicion analysis.[26]
The record in this case provides significantly more detail. The site of the suspected drug activity in this case was a specific residence, not a general area as in Lee. Bauer testified that he knew the name of the resident and that the police department had received complaints from neighbors about "stop-and-go traffic" near the residence. Bauer, who had received specialized drug interdiction training in addition to his training as a drug detection dog handler during his 7 years of service as a Norfolk police officer, testified that "stop-and-go traffic" at a residential location is an indicator of unlawful drug trade being conducted there. Bauer testified that he had received reports over a period of 2 years that the resident was involved in unlawful drug activity, and he identified by name two persons arrested for drug offenses who reported that they had obtained drugs from the resident of the house. He further testified that the most recent report of drug activity at the residence was approximately 1 month prior to Louthan's arrest. Reasonable suspicion may be based upon information which may not be sufficient to establish probable cause. It follows that the "degree of reliability of an informant that must be shown to justify an investigatory stop is less than that required to establish probable cause."[27] We conclude that Bauer's testimony regarding prior drug activity at the residence was sufficiently detailed and reliable to be considered in a reasonable suspicion analysis and that the district court did not err in doing so.

(b) Prior Drug Arrest
An individual's criminal history may be a relevant factor when determining whether an officer has reasonable suspicion to detain an individual.[28] In Lee, this court held that the officers' awareness that the motorist had unspecified "`prior drug arrests'" could be considered as a part of the totality of the circumstances in determining whether there was a reasonable, articulable suspicion which would warrant continued detention pending the arrival of a drug detection dog.[29]
In this case, Louthan admitted to Bauer that he had been arrested for possession of methamphetamine in September 2006, approximately 3 months prior to the traffic stop, and that he had last used methamphetamine at that time. We conclude that this information was properly considered by the district court in its reasonable suspicion analysis.

(c) Nervousness
Bauer testified that Louthan was "extremely nervous" when asked if he *464 had "anything illegal" in his vehicle, but in his report, he described Louthan as "somewhat nervous." Although a motorist's nervousness is an appropriate factor for consideration within the totality of the circumstances of a prolonged traffic stop, its presence is of limited significance generally.[30] Standing alone, Bauer's description of Louthan's nervousness would not support a determination of reasonable suspicion. While it may be considered with other factors, it is of minimal significance.

(d) Conclusion
We find no clear error by the district court in its determination of the historical facts which could be considered in determining whether Bauer had a reasonable, articulable suspicion to prolong Louthan's detention for the time required to conduct a dog sniff of his vehicle. Based upon our de novo review of the totality of the circumstances, we conclude that reasonable suspicion existed, based primarily on the facts that Bauer observed Louthan leaving a house at which he had a reasonable basis for believing that unlawful drug activity was conducted and that Louthan admitted he had recently been arrested for possession of methamphetamine.

3. REASONABLENESS OF DETENTION
We must next determine whether the extended detention in this case was reasonable in the context of an investigative stop, both with respect to its duration and the investigative methods employed.[31] Approximately 7 minutes elapsed from the time Bauer initiated the dog sniff until he arrested Louthan for possession of the controlled substance found in his vehicle as a result of the search precipitated by the canine alert and indication. Both the dog and Bauer as its handler were trained and certified for drug detection. We agree with the determination of the district court that the extended detention was reasonable.

V. CONCLUSION
The law enforcement officer had a reasonable, articulable suspicion that Louthan was involved in unlawful drug activity which was sufficient to justify prolonging the traffic stop in order to deploy the drug detection dog which was present on the scene. The prolonged detention was reasonable in the context of a traffic stop, as to both its duration and the investigative methods used. The canine alert and indication provided probable cause for the warrantless search of Louthan's vehicle, a point he does not contest. The district court did not err in denying Louthan's motion to suppress, receiving the evidence obtained in that search, and convicting Louthan of the offense of possession of a controlled substance.
AFFIRMED.
HEAVICAN, C.J., not participating.
NOTES
[1] State v. Voichahoske, 271 Neb. 64, 709 N.W.2d 659 (2006).
[2] Id.; State v. Lee, 265 Neb. 663, 658 N.W.2d 669 (2003).
[3] See id.
[4] Id.
[5] Id.
[6] Illinois v. Caballes, 543 U.S. 405, 410, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).
[7] Id., 543 U.S. at 408, 125 S.Ct. 834.
[8] Id., 543 U.S. at 407, 125 S.Ct. 834, citing United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).
[9] Illinois v. Caballes, supra note 6, 543 U.S. at 407, 125 S.Ct. 834.
[10] See, State v. Voichahoske, supra note 1; State v. Verling, 269 Neb. 610, 694 N.W.2d 632 (2005); State v. Lee, supra note 2.
[11] State v. Voichahoske, supra note 1; State v. Verling, supra note 10.
[12] Id.; State v. Lee, supra note 2.
[13] Id.
[14] See id.
[15] See, U.S. v. Alexander, 448 F.3d 1014 (8th Cir.2006); U.S. v. Martin, 411 F.3d 998 (8th Cir.2005); U.S. v. $404,905.00 in U.S. Currency, 182 F.3d 643 (8th Cir.1999); Hugueley v. Dresden Police Dept., 469 F.Supp.2d 507 (W.D.Tenn.2007); State v. Griffin, 949 So.2d 309 (FIa.App.2007); State v. DeLaRosa, 657 N.W.2d 683 (S.D.2003).
[16] U.S. v. $404,905.00 in U.S. Currency, supra note 15, 182 F.3d at 649.
[17] U.S. v. Alexander, supra note 15, 448 F.3d at 1017.
[18] Illinois v. Caballes, supra note 6; 543 U.S. at 407, 125 S.Ct. 834, citing People v. Cox, 202 Ill.2d 462, 782 N.E.2d 275, 270 Ill.Dec. 81 (2002).
[19] People v. Cox, supra note 18.
[20] Illinois v. Caballes, supra note 6, 543 U.S. at 408, 125 S.Ct. 834.
[21] Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[22] State v. DeLaRosa, supra note 15, 657 N.W.2d at 691 (Sabers, J., dissenting),
[23] State v. Voichahoske, supra note 1.
[24] State v. Lee, supra note 2.
[25] Id. at 670, 658 N.W.2d at 677.
[26] Id. at 670, 658 N.W.2d at 678.
[27] United States v. Eisenberg, 807 F.2d 1446, 1450 (8th Cir.1986).
[28] State v. Lee, supra note 2.
[29] Id. at 671, 658 N.W.2d at 678.
[30] See State v. Lee, supra note 2.
[31] See, State v. Voichahoske, supra note 1; State v. Verling, supra note 10.