IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MILTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JAVARIS MILTON, APPELLANT.

Filed February 14, 2017.    No. A-16-289.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Zoë R. Wade for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

RIEDMANN and BISHOP, Judges, and MCCORMACK, Retired Justice.

RIEDMANN, Judge.

## INTRODUCTION

Following a jury trial, Javaris Milton was found guilty of possession of a deadly weapon by a prohibited person and possession of a controlled substance. The district court for Douglas County sentenced him to 8 to 12 years' imprisonment on the deadly weapon count and 20 to 48 months' imprisonment on the controlled substance count, to be served concurrently. Milton now appeals his conviction on the deadly weapon count to this court. Following our review of the record, we affirm.

## BACKGROUND

On April 3, 2015, Detective Chris Brown and Officer Michael Sundermeier of the Omaha Police Department's (OPD) gang unit responded to a message from other officers that a large

- 1 -

group of gang members was congregating in an empty lot near the intersection of 16th Street and Victor. Brown and Sundermeier were both familiar with that area through their work in the gang unit. After receiving this message, the officers drove towards the reported location. They turned right onto Victor from 18th Street, driving east. That portion of Victor is a one-way street going westbound that runs from 16th Street to 18th Street. The officers were not driving a standard black and white police cruiser with emergency lights on top; rather, they were in a dark-colored Dodge Intrepid that had OPD markings on the sides and lights in the corners of the vehicle and on the visor.

The officers testified that when they turned onto Victor, they observed a grey or silver Chrysler 200 parked facing westbound farther down the street. They observed that the vehicle appeared to be parked in the middle of the street, approximately 3 feet away from the north curb. While the officers ultimately discovered that the vehicle was running at that time, they could not initially tell whether the vehicle was turned on from that distance. As they approached, they could see two females in the front seats of the vehicle.

Brown and Sundermeier also observed a group of 4 to 5 people standing together in the field across the street from the Chrysler. They saw one individual who was between the vehicle and the group in the field. Brown testified that as they drove down the street, he saw this individual look directly at their police vehicle. Both officers testified that they were familiar with this individual, Milton, from prior contact with him, including a previous arrest for possession of a firearm and crack cocaine, and knew that he was a convicted felon. They then saw Milton quickly proceed to the parked Chrysler and get in the rear driver's side door.

As the officers approached the Chrysler, the only violation they knew of was a parking violation, that the vehicle was not parked within 12 inches of the curb. They also testified that they wanted to make contact with the people in the area, including Milton.

The officers stopped their car near the Chrysler in such a way that it was partially blocking the Chrysler from driving forward. They exited their vehicle and as they approached the Chrysler, the officers saw Milton lock the rear driver's side door and then slide over towards the rear passenger's side door. Brown ran to that side of the vehicle to ensure that Milton did not attempt to exit. He then observed Milton lock the rear passenger side door and slide back over behind the driver's seat.

Sundermeier stood outside of the rear driver's side door and observed Milton making furtive gestures with his hands, reaching into his pockets. Sundermeier was concerned about what Milton had on his person and commanded him several times to show his hands. Milton did not comply with any of the commands. From the other side of the car, Brown observed Milton move one hand down towards his feet and then saw him push a metal object under the driver's seat with his right foot. Brown testified that the metal object appeared to be a firearm. He verbally alerted Sundermeier to this and Sundermeier then ordered Milton to unlock the doors and exit the vehicle. Milton still did not comply. After the driver unlocked the doors, Milton was removed from the vehicle and placed in handcuffs.

The officers then observed, in plain view, a firearm partially protruding from underneath the driver's seat of the vehicle. Knowing that Milton was a convicted felon, Brown and Sundermeier placed him under arrest for possession of a deadly weapon by a prohibited person. During a pat-down of Milton's person, the officers found a bag of crack cocaine in his pocket.

Brown and Sundermeier testified that they ultimately did not issue a traffic citation for improper parking to the driver of the vehicle because she was cooperative and had no prior criminal record. Milton, however, was charged with possession of a deadly weapon by a prohibited person, a Class ID felony, and possession of a controlled substance, a Class IV felony.

Milton filed a motion to suppress and the court held hearings on the motion. He argued that the stop of the Chrysler constituted an unlawful seizure. The district court denied Milton's motion and the case proceeded to jury trial.

Before the trial started, Milton filed a motion in limine seeking to preclude the State from introducing testimony regarding his alleged gang affiliation, gang activity in the area of the arrest, and Brown and Sundermeier's employment in OPD's gang unit. The State informed the district court that it did not intend to offer any evidence as to Milton's membership in a gang. The district court granted the motion "as agreed to by the State," but denied that portion of the motion which would have limited any testimony as to the officers' employment in the gang unit and as to why they were in that particular area on the day of the arrest.

During a jury instruction conference, Milton submitted a requested instruction defining the word "possession." The district court refused the requested instruction in favor of its own proposed instruction, which took the definition of "possession" from the Nebraska Jury Instructions.

The jury found Milton guilty on both counts. He was sentenced to 8 to 12 years' imprisonment on the deadly weapon count and 20 to 48 months' imprisonment on the controlled substance count, to be served concurrently. Milton now appeals his deadly weapon conviction to this court.

## ASSIGNMENTS OF ERROR

Milton assigns, restated and renumbered, that the district court erred in (1) denying his motion to suppress; (2) permitting testimony from the officers that they are part of the gang unit and that Milton was affiliating with gang members; and (3) denying Milton's requested jury instruction defining the word "possession."

## STANDARD OF REVIEW

In reviewing a trial court's order on a motion to suppress based on a claimed violation of the Fourth Amendment, appellate courts apply a two-part standard of review. *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014); *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014). Regarding historical facts, appellate courts review the trial court's findings for clear error. *State v. Hill, supra*. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id*.

When the Nebraska Evidence Rules commit an evidentiary question at issue to the discretion of the trial court, an appellate court will review the admissibility of evidence for an abuse of discretion. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). A trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially outweighs its probative value. *Id.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether jury instructions given by a trial court are correct is a question of law. *State v. Rask, supra*. When dispositive issues on appeal present questions of law, an appellate court must review the question independently of the court below. *Id.*

ANALYSIS

*Motion to Suppress.*

Milton argues that the district court erred in overruling his motion to suppress. He claims that Brown and Sundermeier unlawfully seized the Chrysler by blocking it in when they had no reasonable suspicion that anyone in the vehicle was engaged in criminal activity. Milton also argues that the seizure of the vehicle was not justified by the officers' claim that they observed a parking violation because there was no such violation and the officers only initiated the stop so that they could talk to him.

The Fourth Amendment guarantees the right to be free from unreasonable search and seizure. *State v. Bol*, 288 Neb. 144, 846 N.W.2d 241 (2014). This guarantee requires that an arrest be based on probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity. *Id.* A traffic stop requires only that the investigating officer have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. *Id.* To determine whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account. *Id.*

Before we turn to the question of whether the seizure of the vehicle was lawful, we first address the State's contention that Milton does not have standing to challenge the seizure and subsequent search. The State claims that Milton does not have standing to allege a Fourth Amendment violation because he has no possessory interest in the vehicle and he was not a passenger who had a legitimate expectation of privacy in the vehicle.

The Nebraska Supreme Court has held that an occupant of a vehicle ordinarily has a legitimate expectation to be free of unreasonable governmental intrusion, thus giving him standing to challenge the legality of a stop. *State v. Giessinger*, 235 Neb. 140, 454 N.W.2d 289 (1990). We note that the Nebraska Supreme Court has used the word "occupant," rather than "passenger," which is used by the State. We do not address what the difference, if any, may be between an occupant and a passenger, but we conduct our analysis using the terminology found in case law.

Milton was undoubtedly an occupant of the Chrysler, as he was inside the confines of the vehicle when officers initiated the detention. There was a driver in actual physical control of the vehicle and that person could have easily and instantaneously begun operating the vehicle, as the engine was still running. See *State v. Rask*, 294 Neb. 612, 883 N.W.2d 688 (2016). The fact that Milton had just entered the Chrysler, and that it had not yet moved, is not dispositive. This is not a case where a suspect entered a vehicle at random in an attempt to evade the police. All testimony indicates that Milton intended to become an occupant of this vehicle and intended to use it as a means of transportation. In fact, Milton and both females in the Chrysler testified that the only reason the vehicle was in that location was to pick up Milton and take him somewhere. Milton acted on this intention and became an occupant of the vehicle when he entered the backseat. Therefore, we find that he was an occupant of the vehicle at the time of the stop and that he does have standing to allege a Fourth Amendment violation.

- 4 -

We next turn to whether the seizure of the vehicle was lawful. Under Nebraska law, a traffic violation, no matter how minor, creates probable cause to stop a vehicle. *State v. Lee*, 265 Neb. 663, 658 N.W.2d 669 (2003). Probable cause to stop a vehicle requires that the facts available to the officers would cause a reasonably cautious person to believe the suspect has committed an offense, but it does not require any showing that this belief is correct or more likely true than false. *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013). This means that the existence of probable cause hinges on the reasonable belief of the officers involved in light of the facts and circumstances known to them. So long as the officers reasonably believe that a traffic violation has occurred, then probable cause exists and it does not matter if they are incorrect.

Here, Brown and Sundermeier testified that they observed a parking violation in that the Chrysler was parked approximately 3 feet from the north curb of Victor, violating a municipal ordinance. Omaha Municipal Code of Ordinances § 36-153 states in relevant part

> No person shall stand or park a vehicle in a roadway other than parallel with the outside edge of the roadway headed in the direction of lawful traffic movement and with the wheels of the vehicle on the side next to the edge of such roadway within 12 inches of the curb or edge of the roadway. . . .

The officers testified that they both immediately noticed the Chrysler and noticed that it was parked far away from the curb, and Brown stated that there was nothing preventing the vehicle from parking within 12 inches of the curb. This constitutes a traffic offense, giving rise to probable cause to initiate a stop of the vehicle.

Milton argues that no parking violation occurred because "standing" and "parking," as defined by state statute, exclude the temporary stopping of a vehicle for the purpose of and while actually engaged in the receiving or discharging of passengers. Neb. Rev. Stat. §§ 60-645 (Reissue 2010), 60-665 (Reissue 2010). Therefore, Milton claims that under the municipal ordinance, there was no parking violation because the Chrysler was engaged in the loading of a passenger while it was stopped, and the officers had no reasonable belief that a violation had occurred.

However, Milton's reliance on the actual existence of a violation is misplaced. Probable cause to stop a vehicle does not depend on whether an officer was correct in believing that a traffic violation occurred; rather, it depends on whether his belief that a violation had occurred was reasonable. See *State v. Eberly, supra*. Here, both officers testified that based on their observations of the vehicle, they believed that it was parked unlawfully. At the suppression hearing, Sundermeier testified that that he was unaware that "standing" and "parking" were intended to exclude the stopping of a vehicle to pick up or drop off passengers. We do not require police officers to be legal scholars and we place more emphasis on officers knowing when facts are sufficient to give rise to probable cause for a stop than on knowing the legal basis for such. Under these circumstances, we find that it was reasonable for Brown and Sundermeier to believe that the Chrysler had committed a violation of the municipal parallel parking ordinance and to initiate a stop of the vehicle.

Milton also argues that the stop was unlawful because the officers just wanted to make contact with him, rather than investigate a parking violation. To support this argument, he points to the fact that the officers did not issue a citation to Brendle for unlawful parking. However, it is well-established that if an officer has probable cause to stop a vehicle, any ulterior motivation for

the stop is irrelevant. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008). Both the U.S. Supreme Court and our Supreme Court have rejected "pretextual" arguments regarding routine traffic stops. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). If an officer has probable cause to stop a violator, the stop is objectively reasonable and any ulterior motivation is irrelevant. *State v. Draganescu, supra.*

Furthermore, in determining whether a vehicle stop was reasonable, the question is not whether the officer issued a citation for a traffic violation, but whether the officer had probable cause to believe that a traffic violation had occurred. *State v. Sanders*, 289 Neb. 335, 855 N.W.2d 350 (2014). The fact that ultimately no citation was issued does not render a stop unlawful. *Id.*

Both officers testified to observing what they believed to be a parking violation, which gave rise to probable cause for the officers to initiate a stop of the Chrysler. The fact that the officers also stated that they wanted to talk to Milton does not render the stop unlawful. Similarly, the legality of the stop is not affected by the officers' decision to not issue a citation to the driver of the vehicle. Such a decision is within the discretion of the officers and has no bearing on whether the initial stop was lawful. Therefore, we find that the officers had probable cause to stop the vehicle.

Milton also argues that he was seized in violation of the Fourth Amendment when the officers blocked both of the vehicle's rear doors, thereby preventing him from exiting the vehicle. He claims that, as with the initial stop of the vehicle, the officers had no objectively reasonable suspicion that he was engaged in any criminal activity and, therefore, this seizure was also unlawful. We disagree.

Once a vehicle has been lawfully stopped, law enforcement officers are permitted to conduct an investigation reasonably related in scope to the circumstances that justified the stop. *State v. Louthan*, 275 Neb. 101, 744 N.W.2d 454 (2008). This includes several investigatory actions, such as asking for the driver's operator's license and registration, asking the driver to sit in the officers' patrol car, and asking the driver about the purpose and destination of his or her travel. *Id.* An investigating officer is also permitted to run a computer check to determine whether the vehicle has been stolen and whether there are any outstanding warrants for any of the vehicle's occupants. *Id.*

As we stated previously, Milton was undoubtedly an occupant of the Chrysler when officers made the initial stop. Even though Brown and Sundermeier testified that they recognized Milton and therefore knew who he was, his status as an occupant of the vehicle permitted them to run a computer check to determine whether there were any outstanding warrants for Milton. Doing so would not impermissibly extend the scope or duration of the stop. While any warrant checks are being run, it is reasonable for officers to require that all occupants remain in the vehicle to ensure officer safety. Therefore, it was reasonable for the officers to block the potential points of egress from the backseat to ensure that Milton did not flee and doing so did not unlawfully seize him. Since we find that the officers had probable cause to stop the vehicle and did not unlawfully seize Milton by blocking him in the backseat, we find that the district court did not err in denying Milton's motion to suppress.

*Gang Testimony.*

Milton assigns as error that the district court allowed testimony from Brown and Sundermeier that they are members of the gang unit with OPD as well as testimony that Milton was seen affiliating with gang members at the time of his arrest. Milton claims that evidence of gang affiliation is inherently prejudicial, as it invites the jury to convict on the basis of the accused's relationship with unsavory individuals rather than on the merits of the case. He argues that the State did not need to adduce any evidence relating to gang affiliation or the officer's involvement in the gang unit in order to establish its case-in-chief and thus any evidence of such was overwhelmingly prejudicial.

In support of his argument, Milton relies on several different cases. One case, *State v. Poe*, 276 Neb. 258, 754 N.W.2d 393(2008), notes that the U.S. Court of Appeals for the Eighth Circuit has said that evidence of gang membership is admissible as relevant to an issue in dispute, but not if it is merely meant to prejudice the accused or prove his guilt by association. Milton also relies on *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006), which discusses an Alabama case wherein the court found that purposefully elicited testimony directly indicating gang membership is highly prejudicial.

In response to Milton's motion in limine seeking to bar any references to gangs or the gang unit, the district court ruled that the officers would be allowed to testify that they were members of the gang unit and as to why there were in that particular area on the day of the arrest. As agreed upon by the parties prior to trial, there was no mention of whether Milton was a gang member. In the absence of any purposefully elicited testimony regarding Milton's gang membership, we are left to determine whether any of the testimony was admitted solely to prejudice Milton and not as relevant evidence.

We find that the officers' testimony that they are part of the gang unit, that their day-to-day responsibilities include patrolling known gang areas, and that they were in that particular location in response to a message from other officers that a number of gang members were observed to be congregating in a nearby lot was relevant evidence admitted to establish in what capacity the officers were working and why they were in that area. Such testimony is relevant to the officers' training and experience as well as their familiarity with location where Milton was arrested. Furthermore, none of the testimony alleged that Milton was a gang member, although Sundermeier did testify that when he first saw Milton, Milton was standing with the group of people in the vacant lot on Victor Street. While a juror may surmise that the "group" was the group of gang members to which the officers had been directed, the testimony as to Milton's location when first seen was elicited without objection. We do not find that any of the officers' objected to testimony was substantially more prejudicial than it was probative, and thus the district court did not abuse its discretion in allowing such testimony at trial.

*Requested Jury Instruction.*

Milton next assigns that the district court erred in denying his proposed jury instruction regarding the definition of "possession." His requested instruction stated:

> "Possession" within the meaning of a criminal statute means something more than momentary control over an object. Possession means having actual control, care, and management of, and not passing control, fleeting and shadowy in its nature.

Milton argues that his requested instruction was a correct statement of law and was warranted because the evidence demonstrated that no one ever saw him physically holding the firearm and his only contact with it was the very brief incidence where he pushed it under the seat using his foot. Milton claims that the district court's failure to give this instruction essentially assured that the jury would convict him on the basis of the very minimal contact he had with the firearm and withdrew from them the issue of whether such contact was legally sufficient to constitute possession. He also alleges that the district court's refusal to give his requested instruction deprived the jury of the opportunity to see the evidence in a manner consistent with his innocence.

The jury instruction given by the district court stated that, "'[p]ossession' means either knowingly having an object on one's person or knowing of the object's presence and having control over the object." As the district court noted in denying Milton's requested instruction, this definition is taken directly from the Nebraska Jury Instructions.

In reviewing a claim of prejudice from jury instructions given or refused, the appellant has the burden to show that the allegedly improper instruction or the refusal to give the requested instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016). To establish reversible error from a court's refusal to give a requested instruction, the appellant has the burden to show that (1) the proposed instruction is a correct statement of the law, (2) the proposed instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the proposed instruction. *Id*. All jury instructions must be read together and, if taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016). If there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give this instruction to the jury in a criminal case. *State v. Lavalleur*, 289 Neb. 102, 853 N.W.2d 203 (2014).

We agree with Milton that his requested instruction does contain a correct statement of the law. See *State v. Williams,* 211 Neb. 650, 319 N.W.2d 748 (1982). Likewise, we find that the proposed instruction was warranted by the evidence. However, we do not agree that Milton was prejudiced by the district court's refusal to give his requested instruction. We do not agree, as Milton alleges, that the instruction given by the district court "invited, if not assured" that the jury would convict him. Appellant's brief at 25. The instruction given required that in order to convict Milton, the jury would have to find that Milton not only knew of the presence of the firearm, but that he also had control over it. Given the absence of any evidence that anyone ever saw the firearm on his person, we focus only on his knowledge and control of the firearm. Additionally, Instruction number 3 set forth the elements of the crime to include (1) that Milton possessed a firearm on the given date in Douglas County, Nebraska; (2) that he did so intentionally or knowingly; and (3) that he had previously been convicted of a felony. Reading the instructions together, we do not agree that "the jury would convict Milton of possessing a firearm based on the fleeting contact between the gun and Milton's foot." Because the substance of the requested instruction was covered in the instructions given, there is no prejudicial error. Furthermore, we iterate the Nebraska Supreme Court's preference for criminal courts to give a jury instruction from the Nebraska Jury Instructions, which the district court did in this case. As such, we find that the district court did not err in refusing to give Milton's requested jury instruction.

## CONCLUSION

Following our review of the record, we find Milton's assignments of error to be without merit and therefore affirm.

AFFIRMED.