IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. ZHU

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

YING H. ZHU, APPELLANT.

Filed November 3, 2020.    No. A-20-262.

Appeal from the District Court for Buffalo County: JOHN H. MARSH, Judge. Affirmed and remanded for resentencing.

Charles D. Brewster and Carson K. Messersmith, Senior Certified Law Student, of Anderson, Klein, Brewster & Brandt, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.


PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Ying H. Zhu was convicted of possession of marijuana with intent to distribute following the discovery of 90.8 pounds of marijuana in his vehicle during a traffic stop. On appeal, he assigns that the district court erred in denying his motion to suppress because the search violated his rights under the Fourth Amendment. We affirm the denial of his motion to suppress and, thus, affirm his conviction. However, we find plain error in the sentence imposed and remand the cause for resentencing.

### BACKGROUND

On February 1, 2019, Nebraska State Patrol trooper Justin Davis was traveling eastbound on Interstate 80 near mile marker 290 in Buffalo County, Nebraska, when he conducted a traffic

stop on a pickup truck for failing to use a turn signal to change lanes. Davis observed that the truck was an extended cab pickup with a topper that also had a bike rack on the back with a bike on it. He noticed the chain on the bike was completely rusted and that there was a zip tie around the spokes of the front tire of the bike. Davis also observed that there were two locks on the topper of the truck.

Davis approached the truck and made contact with the driver, identified as Zhu. Zhu provided his name and driver's license, which was issued in California. Davis explained the reason for the stop, and it appeared to him that Zhu was having difficulty understanding English. Zhu told Davis that he was on his way to Boston, Massachusetts, to meet his cousin to install cabinets. Davis asked Zhu to accompany him back to his patrol car, and Zhu did so.

Once they returned to Davis' patrol car, Davis contacted State Patrol Dispatch to check the status of Zhu's driver's license and criminal history. At that time, Davis also initiated conversation with Zhu, repeating that the reason for the stop was his failure to signal a lane change and informing Zhu that he was going to give him a warning. Davis also asked Zhu questions about his trip such as when he left California, where he was heading again, and the purpose of his trip. At that time, Zhu said he was going to visit his sister. Davis became suspicious, not only because of the change in Zhu's story, but also because Zhu began to look away (looking out the window and avoiding eye contact) and to act evasively.

While Davis was waiting for a response on the license and records check, and based on his suspicions, he decided to deploy his drug dog, which was in his patrol car. According to a video of the traffic stop taken from Davis' patrol car, the deployment of the canine occurred approximately 7 minutes into the traffic stop. Davis led his canine around the truck for approximately 2 minutes before the canine gave a passive indication for the odor of narcotics near the passenger taillight. Based on the canine's indication, Davis searched the truck and discovered several trash bags containing marijuana. A subsequent, more thorough, search was conducted after the truck was towed to the State Patrol's office, and a total of 90.8 pounds of marijuana was found in the truck.

Zhu was ultimately charged with possession of marijuana with intent to distribute. Prior to trial, he filed a motion to suppress the results of the search of the truck. A suppression hearing was held, and the testimony revealed the information detailed above. The district court subsequently determined that there was probable cause for the traffic stop based on the traffic violation of failing to signal a lane change. The court additionally found that Davis had reasonable suspicion to conduct a canine sniff and had probable cause to search the truck based on the indication of the canine. The motion to suppress was therefore denied.

Thereafter, a stipulated bench trial was held at which Zhu renewed his motion to suppress. The evidence presented consisted of the video recording of the traffic stop from Davis' patrol car, numerous photographs, and stipulated facts. The court ultimately found Zhu guilty of possession of marijuana with intent to distribute. He was sentenced to 4 years' probation with a jail term. Zhu appeals.

## ASSIGNMENT OF ERROR

Zhu assigns that the district court erred in denying his motion to suppress.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Saitta*, 306 Neb. 499, 945 N.W.2d 888 (2020). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Saitta, supra*.

ANALYSIS

*Motion to Suppress.*

Zhu argues that the district court erred in denying his motion to suppress because his Fourth Amendment rights were violated when Davis impermissibly expanded the traffic stop without reasonable, articulable suspicion of criminal activity. We disagree because the deployment of the drug detection dog was done during a lawful stop within the time period reasonably required to accomplish the stop's mission.

In *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018), the Nebraska Supreme Court recognized that the U.S. Supreme Court has cautioned that a lawful traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of the stop. See *Rodriguez v. U.S.*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). When the mission of an investigative stop is addressing a suspected traffic violation, the stop may last no longer than is necessary to effectuate that purpose and authority for the seizure thus ends when tasks tied to the traffic infraction are--or reasonably should have been--completed. *Rodriguez v. U.S., supra*; *State v. Barbeau, supra*. However, beyond just determining whether to issue a traffic citation or warning, an officer's mission in a traffic stop includes ordinary inquiries incident to the traffic stop. *Rodriguez v. U.S., supra*; *State v. Barbeau, supra*. Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez v. U.S., supra*; *State v. Barbeau, supra*.

In *State v. Barbeau, supra*, the Nebraska Supreme Court additionally recognized that it, too, has long held that once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. *Id*. Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are any outstanding warrants for any of its occupants. *Id*.

Zhu argues that Davis lacked the reasonable suspicion required to expand the traffic stop beyond its initial purpose; however, the traffic stop was not expanded here. According to both the U.S. Supreme Court and the Nebraska Supreme Court, part of an officer's mission in a traffic stop is to determine whether the driver has a valid license and whether there are any outstanding warrants. See, *Rodriguez v. U.S., supra*; *State v. Barbeau, supra*. The law requires that in order to

expand the scope of a traffic stop *and continue to detain a vehicle's occupants for the time necessary to deploy a drug detention dog*, an officer must have a reasonable, articulable suspicion that the person is involved in criminal activity beyond that which initially justified the interference. See *State v. Louthan*, 275 Neb. 101, 744 N.W.2d 454 (2008).

In the present case, Davis did not continue detention of Zhu in order to conduct the dog sniff; rather, the dog sniff occurred before the license and records check was complete, and thus, prior to the completion of the traffic stop investigation. Further, the dog sniff occurred approximately 7 minutes into the traffic stop, and Zhu does not argue that 7 minutes is an unreasonable length of time to complete a traffic stop. A traffic stop becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of the stop, which includes conducting an investigation into the driver, and the authority for the seizure ends when tasks tied to the traffic infraction are completed. *Rodriguez v. U.S.*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015); *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018).

Here, because the canine sniff occurred before the license and criminal history check was complete, it was done during the time required to conduct the normal investigative inquiries relating to the stop, which an officer is permitted to do as part of the mission of the stop. Accordingly, the traffic stop was not prolonged beyond the time reasonably required to complete the mission of it.

With regard to the scope of the traffic stop, a dog sniff conducted during a lawful traffic stop that reveals no information other than the location of contraband does not violate the Fourth Amendment. See *Illinois v. Caballes*, 543 U.S. 405, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005). See, also, *State v. Ferguson*, 301 Neb. 697, 919 N.W.2d 863 (2018). The Court in *Illinois v. Caballes, supra*, explained that drug detection dog sniffs in themselves do not infringe upon a constitutionally protected privacy interest, because they are designed to reveal no information other than the possession of contraband and its location. And society, the Court explained, is not prepared to consider as either reasonable or legitimate any subjective expectation that possession of contraband will not come to the attention of the authorities. *Id*.

There is no question that Davis conducted a lawful traffic stop on Zhu's truck for a traffic violation and that the canine sniff was completed during that traffic stop prior to the completion of the mission of the stop. Because the sniff was done during a lawful traffic stop and revealed nothing other than the location of the marijuana, it did not implicate Zhu's Fourth Amendment rights or impermissibly expand the scope of the stop. The district court therefore did not err in finding no violation of Zhu's Fourth Amendment rights and denying his motion to suppress.

*Plain Error.*

Although we affirm Zhu's conviction, we notice plain error in the sentence imposed. An appellate court may, at its option, notice plain error. *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020). Plain error may be found on appeal when an error unasserted or uncomplained of at trial is plainly evident from the record, affects a litigant's substantial right, and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id*.

During the sentencing hearing, the court announced a sentence of 4 years' probation with a term of 25 days in jail with credit for 5 days served. The subsequent written sentencing order, however, reflects a term of 4 years' probation and 45 days in jail with 5 days of credit.

It is plain error if a written judgment is not made to conform to the pronounced judgment, and in such circumstances, it is appropriate to modify the written judgment to conform to the pronounced sentence. See *State v. Street*, 306 Neb. 380, 945 N.W.2d 450 (2020). A sentence pronounced upon a defendant is controlling over a later erroneous written sentence. *Id*.

There is no question that the court had the authority to, as a condition of probation, require Zhu to serve 25 days or 45 days in jail. See Neb. Rev. Stat. § 29-2262 (Supp. 2019). Therefore, because the district court pronounced a valid sentence at the time of the sentencing hearing, the court's oral pronouncement controls.

## CONCLUSION

The district court did not err in denying Zhu's motion to suppress. We therefore affirm Zhu's conviction, but, having found plain error in the sentence imposed, we remand the cause to the district court with directions to enter a corrected sentencing order which shall align with the court's oral pronouncement of sentence of 4 years' probation with 25 days in jail and credit for 5 days served.

AFFIRMED AND REMANDED FOR RESENTENCING.